UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Criminal No:   17-10197-PBS |
| ) | |
| v.                                         ) | |
| ) | |
| CECILY STURGE,                 ) | |
| ) | |
| Defendant.                  ) | |

## SENTENCING MEMORANDUM

The United States respectfully submits this sentencing memorandum in support of its recommendation that Defendant Cecily Sturge ("Sturge") be placed on probation for a period of 24 months, with a special condition that she be ordered to perform 240 hours of community service, and fined $7,500.  This recommendation is within the applicable guidelines range. There are no legal issues unaddressed or inadequately addressed in the presentence report ("PSR") and, although Sturge makes a number of incorrect or misleading factual assertions in her objections to the PSR which will be discussed in this memorandum,[1] there are no factual issues requiring an evidentiary hearing.

---

[1] The government will address Sturge's specific claims as they relate to a particular fact or PSR paragraph when those facts/paragraphs are referred to in this memo.  To the extent that Sturge also makes an overarching claim that the PSR includes, in her view, "extraneous details that are irrelevant to the elements of the crime charged,"  [Obj. 3; 2-12], the government agrees with the Probation Officer that the PSR provides the Court with "a complete picture of the offense, which in turn, gives the Court the ability to make findings of fact based on all of the available evidence."  [Prob. Off. Resp. to Obj. 1-4].  Further, as noted by Probation, inclusion of information about the Wolas investigation is certainly relevant to Sturge's case as she was charged with (and pleaded guilty to) lying to federal agents in connection with that investigation. [Id.]

## I.   The Offense

The facts of this case were recounted in detail at the change of plea hearing, are fully set forth in the PSR, [PSR ¶ ¶ 8-17], and will not be reiterated at length here.  In summary, law enforcement was looking for Sturge's ex-husband, Scott Wolas, who had assumed another identity, defrauded Massachusetts investors out of about $1.7 million in a real estate investment scheme, and fled the Commonwealth. [PSR ¶ 8].[2]  Law enforcement interviewed Sturge at her Florida home on November 17, 2017 and she maintained she did not know where Wolas was, had had no contact with him, and did not know how to reach him.  [Id.] That was false.  In fact, Sturge had helped Wolas (as her "brother, Cameron Sturge") rent a condominium room through Airbnb—and had accompanied him there just five days before the interview. [PSR ¶ ¶ 11-12].[3]

_____

[2] Sturge "denies that she had any knowledge of the crimes for which the FBI was investigating Wolas."  [Obj. 2].  In the same November 17, 2016, interview with law enforcement for which she is charged in this case, however, Sturge told the agents that she knew from reading the newspaper that Wolas was using the identity of a friend of hers from Florida— someone that Wolas also had met—and that Wolas also had used the identities of other people he knew.  It is unclear what newspaper article or articles Sturge was referring to, but there was media coverage shortly after Wolas left Massachusetts that detailed the real estate investment scheme for which he was being investigated. _See, e.g._ http://www.tauntongazette.com/news/20160922/alleged-quincy-con-artist-met-with-mayor-about-beachcomber-plan

[3] Sturge claims that this conduct should not be understood as an effort to help Wolas evade arrest and further, that Wolas told law enforcement upon his arrest that he set up the Airbnb account and the November 2016 rental on his own, "that Ms. Sturge did not assist him in any way," and that he used Sturge's debit card to pay for the room without her authorization. [Obj. 5].  Leaving aside that Wolas, who stands charged with a $1.7 million investment fraud using the identity of another person, is not the most reliable source of information, the fact is that Sturge drove Wolas to the condominium on November 12, 2016, his first day of staying there, where he was introduced to the homeowner as Cameron Sturge, her paleontologist brother.  Five days later, she told law enforcement that she had no clue where he was and had had no contact with him for 15 years.  There also is evidence that she spoke to the homeowner on the phone before taking Wolas to the condo [PSR ¶ 11], and, regardless of whether Wolas used her debit card with or without her authorization, the $539 rental payment came out of her checking account—the same account that she used for her household bills and into which her Social

She also had more than 90 telephone contacts with Wolas during the three months that elapsed between Wolas's flight from Massachusetts and the law enforcement interview in November 2016, including a 3-minute call just two days prior to the interview.  [PSR ¶ 9].  Yet, she told law enforcement that she had had no contact with Wolas for approximately 15 years and maintained that this was so despite being confronted with the then-known evidence of a single contact between her cell phone and one known to belong to Wolas that demonstrated more recent communication between the two.  [PSR ¶ 8].

Law enforcement believed Sturge and continued with its investigation and efforts to locate Wolas, which included the discovery, in approximately March 2017, of additional phone numbers used by Wolas, and ultimately to Wolas's arrest on April 7, 2017.  [PSR ¶ 9].  Wolas was arrested in the same Airbnb condominium room that Sturge in November 2016 had helped him secure.  [PSR ¶ 10].   Documents seized from Wolas's room and from his computer led to the discovery of additional Sturge false statements—this time to a Florida state court—as Sturge attempted to obtain the $647,000 contents of Wolas's retirement account at the New York law firm where he worked prior to being indicted in 1997 by New York authorities and fleeing that jurisdiction.  [PSR ¶ 13].  The documents related to Sturge and Wolas's divorce proceeding in Palm Beach County, Florida, a divorce that was granted to Sturge by default judgment in 2001. [PSR ¶ 13].   In pleadings filed in that case in February and March 2017, Sturge swore that Wolas's whereabouts were unknown to her, despite telephone records showing frequent contact between the two and bank surveillance photos that showed the two of them together at a Florida bank where some of the pleadings were notarized. [PSR ¶¶ 13-16].   As described above, copies

---

Security payments were deposited—so one would expect her to be aware of such a significant withdrawal.

or drafts of documents filed in the Florida proceeding were found in the room and on a thumb

drive taken from the room where Wolas was arrested. [PSR ¶ 17].[4]

---

[4] Sturge claims that she herself did not draft or file the pleadings in the Florida proceeding.  [Obj. 7-12].  No doubt Wolas drafted the documents for her, as copies/drafts of the pleadings were found in his Airbnb room and on a thumb drive seized after his arrest.  And it is immaterial who personally delivered the pleadings to the Florida court.  Sturge does not deny that she signed multiple sworn documents which were filed in that court in February and March 2017 in which she stated that Wolas's whereabouts were unknown to her, that she had no contact with him since 1995, and that she had unsuccessfully attempted to personally serve Wolas with the pleadings but that she did not know where he was.  [PSR ¶ 13, 15].  Not only did she know where Wolas was, she knew that he had drafted the documents and she was with him at the bank on February 8, 2017 when certain of the pleadings were notarized.  Sturge is correct when she states that the notary first told law enforcement that her encounter with Sturge, identified by a driver's license, and a "white man in his 60s" who was with her, occurred on February 7, 2017.  In a subsequent interview, however, the notary said she might have been mistaken about the date, that she had not logged the encounter, and was using the date on a written admonishment she had received from her manager because the man with Sturge had complained to the manager about her.  In any event, surveillance video from February 8, 2017, shows Sturge and Wolas getting out of the same car at the bank, walking inside, and then leaving the bank together in the same car.  Additionally, the notary signature block on certain of the pleadings indicates that they were notarized on February 8, 2017.  The pleadings, the interview reports and the bank surveillance video and stills, all were produced in discovery.

Sturge also points out that her lawyer son, Tyler Wolas, "worked in connection with his father" to modify the divorce judgment in order to transfer the retirement account to Sturge.  Tyler Wolas did not make his appearance in the Florida proceeding until April 25, 2017, a couple of weeks after Scott Wolas had been arrested and after Wolas had informed the magistrate judge in Florida that he had no money anywhere in the world.  [17-cv-11032-RWZ, D. 2 at 19].  Additionally, in recorded jail conversations between Sturge and Wolas after Wolas's arrest, Sturge asked Wolas to convince Tyler to help her with the Florida proceedings.  Wolas later told Sturge that he had done so.  Neither Tyler Wolas nor Sturge sought to correct the record as to Sturge's representations that Scott Wolas's whereabouts were unknown to her.

The funds in the retirement account have not been transferred to Sturge as the account has been restrained.  [17-cv-11032-RWZ.]  The government intends to forfeit this account and seek DOJ authorization to use the funds for restitution for the victims of Wolas's fraud.

## II.  Calculation of Guidelines

Both parties have agreed that the PSR's calculation of the guidelines is correct and that the resulting advisory guidelines sentencing range is 0 to 6 months with a fine range of $500 to $9,500.  [PSR ¶ 73, 83].

## III.  Sentence Recommendation

Among the factors to be considered by the Court in fashioning an appropriate sentence are the "nature and circumstances of the offense."  18 U.S.C. §3553(a)(1).  This was a serious offense with potentially significant consequences.  Sturge's lies to law enforcement, which they believed, could very well have resulted in Wolas evading arrest to answer for his crimes.  Again. It was only through continued diligent investigation that agents were able to track Wolas down, some five months after their interview with Sturge.  His ultimate arrest was certainly not a foregone conclusion, especially given that Wolas had managed to elude capture for the New York charges for some 20 years.  Sturge's lies were also deliberate in that she maintained her ignorance even after being confronted with some evidence of contact between them (the one then-known phone contact) and after being reminded that lying to federal agents was a crime. And she maintained this ignorance well-knowing that the two had practically daily phone contact from the time Wolas fled Massachusetts until the interview, and that a mere five days before she had driven Wolas to an Airbnb rental for her "brother" "Cameron Sturge."

The GSR is 0 to 6 months and, in the government's view, some term of incarceration would not be unreasonable.   That is why the government has recommended not only a two-year probationary term, but also a significant time commitment of 240 hours of community service, and a $7,500 fine that Sturge is capable of paying but which will no doubt require some

sacrifices on her part.  Such a sentence "reflect[s] the seriousness of the offense," "promote[s]

respect for the law" and is a "just punishment" for the offense.  18 U.S.C. § 3553(a)(2)(A).   This

sentence also would provide both specific deterrence for the defendant and provide general

deterrence for others who might be tempted to commit such crimes. 18 U.S. C. § 3553(a)(2)(B)

& (C).

<div style="margin-left:40%">

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

</div>

By:     /s/ Sandra S. Bower
            SANDRA S. BOWER
            Assistant U.S. Attorney
            1 Courthouse Way, Suite 9200
            Boston, MA 02110

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

<div style="margin-left:40%">

Sandra S. Bower
SANDRA S. BOWER
Assistant United States Attorney

</div>

Date: April 20, 2018